Chief Justice Marshall
delivered the opinion of the Court.
The instructions in this case, though some of those given on behalf of the plaintiff are longer and more minute in detail than necessary, conform substantially to the principles of the former opinion, and seem to embody them. There was no error in giving them as asked.
Though the affidavit of the defendant states that he did not know, until after he was accepted, that Salyers, who was one of the jury on the last trial, had been one of the jury on the former trial, (when a verdict was found for the plaintiff) it is not a sufficient ground for a new trial. The objection might have been made at any time before the juror was sworn, and, as we think, at any time before the entire jury w.as sworn, and the fact should have been made known as soon as discovered, at any time before the jury retired, when it might have been in the *564 power of the parties to cure or waive the objection'. Besides, the record of the former trial furnished to the parties and their counsel the means of knowing the names of the jurors who had then tried the case, and even if they were not personally known, the identity of name would suggest the probable identity of the person; and even without the trouble of examining the record, the fact that there had been a previous trial, authorized, and should have suggested, the question to be asked of the juror himself, whether he had been one of the former jury. With such opportunities of ascertaining the fact, the failure to disclose it until it is made the ground of asking a new trial, raises a presumption of bad faith, or of willful neglect, which can only be overcome by showing such extraordinary circumstances, if there can be any such, as will account for ignorance where the party ought to have knowledge, and excuse neglect where he is bound to be diligent. In tlris case the affidavit of Salyers proves that he and the defendant were familiar acquaintances and friends. — - And thus the circumstances strengthen instead of repelling the unfavorable presumptions in the case. And we may add, that even if the defendant himself were ignorant, it is not shown that his counsel, who conducted the defense, did not know the fact now brought forward, nor, if they were ignorant of it, is any reason shown for their neglecting the means of knowledge so easily within their power. The affidavit, therefore, makes out no ground for a new trial.
2. A plaintiff collected, a part of a judgment recovered for as sault and battery, which judgment was reversed, when the plaintiff gave bis obligation with surety, to refund the amount collected incase he should not recoverthat amount on a second trial. On the second trial the surety was offered as a witness, and object ed to; objection sustained; plain tiff offered other surety; objected to, and objection sustained.— Money deposited to the extent of the liability of surety: Held, that his competency was thereby restored.
*564 We are of opinion, further, that no error was committed in overruling the objections to the competency of J. M. Elliott, offered as a witness for the plaintiff. It seems that upon the first judgment in this action the plaintiff had,before its reversal, caused execution to issue, on which two tracts of land and a horse had been sold for about $65, and the net proceeds of the sales had been credited on the execution. After ' the mandate of this court, directing a new trial, was entered, the defendant, instead of moving for restitu *565 tion, took a bond from the plaintiff, with said Elliott, and another, as sureties, to secure such repayment as might be ordered by the court. This obligation made the sureties interested in the event of this suit, to the extent that the plaintiff might be hound to return what he had recovered under the reversed judgment. If he should recover damages beyond the amount received, he and his sureties would be under no liability on the bond. The bond having, as it seems, been the result of agreement between the parties, the court properly refused to permit the plaintiff, ¡against the consent of the defendant, to substitute it by a new ■bond with other sureties, in discharge of Elliott’s liability, and as a means of restoring his competency. But there was no error in allowing the plaintiff to deposit in conrt a sufficient sum of money in discharge of the undertaking of the plaintiff and his sureties, which seems to have been entered upon the record. The deposit of such sum would be, and was a complete discharge of the bond, and as it removed entirely the liability of the sureties, and their consequent interest in the result of the suit, it made each and either of them competent to testify on either side. The sum deposited, and to which this effect was given, was $40, which being not quite two-thirds of Avhat had been returned as made on the executions, seemed at first not to be a sufficient sum. But on examining the returns on the executions, we find that the horse was purchased by the plaintiff at the price of $30, and the two tracts of land were purchased by the defendaut himself at the price of about $35, for which he executed sale bonds. But it does not appear that any part of these bonds had been paid before the reversal of the judgment. And as the sales were made in the early part of the year 1852, and the mandate of reversal was entered in October of the same year, payment is not to be presumed in favor of the party objecting to the witness, upon whom it was incumbent to show his interest and incompetency. In this aspect of the case the sum of *566 $40 seems to be sufficient to cover any liability which the plaintiff and his sureties might incur under the bond or recognizance above stated, even if the plaintiff were defeated in the present action. And if the defendant’s liability on his sale bond might be affected by that event, the plaintiff’s sureties have no interest in that matter. There was no error, therefore, in admitting Elliott as a witness after the deposit of $40 in lieu of the bond in which he was surety. But that sum, being in place of the bond, should not have been allowed to be withdrawn by the defendant, and especially after a second judgment had been obtained against him, and a new trial refused, and an appeal prayed. In that state of the case he would not have been entitled to restitution if there had been no bond, but the question of restitution, on which the right to this $40, or any part of it, depends, would have been suspended until the decis- ■ ion of the case in this court. To place the parties in their proper position in case of an affirmance, if the sale bonds of defendant have not been paid, the credits on the previous executions should be stricken out, and the defendant ordered to restore to the plaintiff any excess of the sum of $40 above the sum bid by him for the horse, with the interest from the time it was due according to the terms of sale. But if the plaintiff received on the executions a sum which, with its interest, exceeds the sum of $40, the excess should be credited on the present judgment, which, as there is no error in the proceedings prejudicial to the defendant, is therefore affirmed.